## PAGANO v MESIROW

Docket No. 76852. Submitted March 21, 1985, at Detroit.—Decided July 31, 1985. Leave to appeal denied, 424 Mich 894.

Guytano Pagano, an employee of a Kroger store located in a shopping center owned by Norman Mesirow and managed by M.I.G. Management Company, attempted to apprehend a suspected shoplifter as the shoplifter was about to leave the store. The suspected shoplifter shot and fatally wounded Pagano while inside the store and then fled. Deborah Ann Pagano, personal representative of the estate of Guytano Pagano, deceased, filed suit against Norman Mesirow, trustee of Sears Shopping Center, doing business as Mesirow and Company, and M.I.G. Management Company in Wayne Circuit Court alleging that defendants were negligent in providing and supervising security personnel in the shopping center. Defendants filed a third-party complaint against the Kroger Company, contending that Kroger had the sole responsibility to maintain security within its store, and moved for summary judgment on plaintiff's action against them. The court, Robert J. Colombo, J., granted the motion. Plaintiff appealed. *Held:*

1. Defendants, as landlords of the shopping center, had a duty to maintain security over the common areas of the center, but, absent an agreement to the contrary, had no duty to maintain security over those portions of the premises leased to others. Plaintiff's argument that this common-law principle is not applicable to the modern urban environment and should be discarded is one best addressed to the Supreme Court.

2. Plaintiff's argument that defendant's undertaking to provide security services gave rise to a duty to exercise reasonable care in the undertaking fails because defendants did not undertake to provide security on the premises leased to Kroger.

3. Defendants had no duty to provide security outside the Kroger store at all hours that the store was open.

Affirmed.

### REFERENCES

Am Jur 2d, Landlord and Tenant § 773.5 (supp).

Landlord's tort liability to tenant for personal injury or property damage from criminal conduct of employee. 38 ALR4th 240.

Landlord's obligation to protect tenant against criminal activities of third persons. 43 ALR3d 331.

LANDLORD AND TENANT — LEASES — TORTS — SECURITY.
> A landlord, absent an agreement to the contrary, is not liable to an employee of a tenant, on the basis of a failure to provide adequate security, for injuries incurred by reason of an assault on the employee in an area of the premises which had been leased to the tenant.

*Swanson & Torgow, P.C.* (by *Paul R. Swanson*), and *Gromek, Bendure & Thomas* (by *Carl L. Gromek*) (of counsel), for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Susan D. Nelson*), for Norman Mesirow.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Timothy D. Wittlinger* and *Linda S. Walton*), for Kroger Company.

Before: WAHLS, P.J., and BRONSON and T. C. MEGARGLE,* JJ.

PER CURIAM. Plaintiff appeals as of right from the grant of summary judgment to defendants Mesirow and M.I.G. in this action seeking damages for the death of her husband, Guytano Pagano. We affirm and, therefore, find it unnecessary to address defendants' cross-appeal.

Guytano Pagano was an employee at a Kroger store located in a shopping center owned by Mesirow and managed by M.I.G. On June 13, 1981, at approximately 10:50 p.m., Pagano attempted to apprehend Larry Burgess, a suspected shoplifter, just inside the exit from the store. Burgess pulled a gun, shot and fatally wounded Pagano, and fled from the store.

Plaintiff seeks relief on the theory that defendants Mesirow and M.I.G. were negligent in providing and supervising security personnel. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendants provided security personnel to patrol and secure the common areas of the mall, particularly the parking lot. Kroger, however, had the sole responsibility to maintain security within its store.

The shopping center security service provided by defendants ceased patrol of the parking lot at approximately 9:30 p.m. each evening. Thus, there was no patrol on duty when Pagano was shot shortly before 11 p.m.

Defendants moved for summary judgment on the grounds that they had no duty to provide security inside the Kroger store where Pagano was shot. The court initially denied the motion, stating:

"I think you can raise a question * * * that the presence of the security forces generally on the property provide protection for the center, and it is intended to protect all of the members of the center or they wouldn't provide it, and/or they would have a particular exclusion in that party's lease, I would think.

"It is no different, really, than the forces that Hudson's provides at Eastland, Northland. They operate for the benefit of all of the stores that are operating there, and if they were suddenly to take the position, we are going to close them at an arbitrary hour, knowing some of the parties were still operating their stores there, I think it is akin to the situation here, and I think they would be liable."

Defendants subsequently brought a new motion supported by *Williams v Detroit,* 127 Mich App 464; 339 NW2d 215 (1983). In *Williams, supra,* the plaintiff, an alleged business invitee at an Autorama show held at Cobo Hall in Detroit, was shot by one of the Autorama exhibitors in an exhibit hall leased by Promotions, Inc., from the city. Promotions, Inc., was responsible for security for

the leased premises while the city provided police patrols in the common areas of Cobo Hall. This Court ruled that the defendant should not be liable where it had not exercised control over the security of the leased premises.

The circuit court concluded that the rule of law enunciated in *Williams* was controlling, that its previous denial of defendants' motion was in error, and it reluctantly granted defendants' motion in reliance on *Williams.*

Plaintiff now argues that the common law principle enunciated in *Williams* arose from the English agrarian society and is inapplicable to the modern urban environment. However, we are not convinced that the principle should be discarded by us at this time. The *Williams* Court saw fit to apply the principle to a modern urban lease, in part because a majority of the Supreme Court in *Samson v Saginaw Professional Building, Inc,* 393 Mich 393; 224 NW2d 823 (1975), "apparently would not extend the landlord's duty to incidents which occurred within the boundaries of the leased premises". *Williams, supra,* p 470. We believe that a new direction in this area of the common law should come from the Supreme Court.

Plaintiff next argues that, even if a duty does not arise out of the relationship of the parties, defendant's undertaking to provide security services gave rise to a duty to exercise reasonable care in the undertaking. This argument fails because defendants did not undertake to provide security on the leased premises of Kroger.

Plaintiff next argues that, in any event, defendants may be held liable for breach of their duty to maintain security in the common areas of the shopping center. Plaintiff asserts that different lighting and a security patrol would have deterred

criminal activity and thus may have avoided the assault on Pagano. We disagree that defendants had the duty to provide security outside the Kroger store at all hours that the store was open. *Escobar v Brent General Hospital,* 106 Mich App 828; 308 NW2d 691 (1981). Even were there a duty, we note with the New Jersey Supreme Court that "there would also be exceptional uncertainty with respect to the issue of causation. This is so because of the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures. It would be quite a guessing game to determine whether some unknown thug of unknowable character and mentality would have been deterred if the owner had furnished * * * some additional police." *Goldberg v Housing Authority of Newark,* 38 NJ 578, 590; 186 A2d, 297 (1962).

Affirmed.