*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARRON MOWER-HARRIGER and JIM
HARRIGER,

UNPUBLISHED
February 1, 2022

        Plaintiffs-Appellees,

v

No. 354016
Ingham Circuit Court
LC No. 19-000049-NI

ERMC II, LP, doing business as MERIDIAN MALL,

        Defendant-Appellant,

and

MERIDIAN MALL LIMITED PARTNERSHIP,

        Defendant.

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

In this premises liability action, defendant ERMC II, LP, doing business as Meridian Mall (ERMC), appeals by leave granted[1] the trial court's orders denying ERMC's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) against plaintiffs, Sharron Mower-Harriger and Jim Harriger. On appeal, ERMC argues that it was neither the premises owner nor in possession and control of the premises where Sharron fell.[2] We agree, and therefore reverse.

---

[1] *Mower-Harriger v ERMC II LP*, unpublished order of the Court of Appeals, entered October 19, 2020 (Docket No. 354016).

[2] In a second issue on appeal, ERMC challenged the trial court's decision to allow plaintiffs to amend their complaint and add Meridian Mall Limited Partnership (MMLP) as a party. At oral argument, plaintiffs represented that they had settled with MMLP, and ERMC conceded that its

## I. BACKGROUND

On January 26, 2017, Sharron allegedly slipped and fell in the parking lot of Meridian Mall (the Mall) in Okemos, Michigan, causing severe injuries. She and her husband, Jim, brought this premises liability action against ERMC for failure to maintain the parking lot free of snow and ice, which allegedly led to Sharron's fall and injuries. In their complaint, plaintiffs alleged that ERMC "owns, operates, and/or has control of the premises" where Sharron fell, and that, on the basis of this control, ERMC had a duty to keep the premises in reasonably safe conditions, which it failed to do. Plaintiffs also alleged an attendant loss-of-consortium claim with respect to Jim.

ERMC filed an answer in which it argued, among other things, that it owed Sharron no legal duty because it did not own, possess, or control the Mall or parking lot where Sharron fell. ERMC contended that it had merely provided security, janitorial, and maintenance services for the Mall, and that these services did not include snow or ice removal from the parking lot.

In plaintiffs' first set of interrogatories, ERMC was asked, "Please state whether you or any agent or employee of the Defendant made any examination or inspection of the place or area where the Plaintiff alleges that the occurrence happened within a 24-hour period prior to the alleged occurrence." ERMC answered, "ERMC II did not have any contractual responsibility to perform any examinations or inspections in the parking lot of Meridian Mall. . . . [I]t is believed the mall owner and/or its agents performed examinations and inspections of the parking lot." In plaintiffs' second set of interrogatories, ERMC was asked, "Please identify which party or parties were responsible for maintenance including, but not limited to, snow and/or ice removal, and salting, of the Meridian Mall parking lot . . . where Plaintiff . . . fell on January 26, 2017." ERMC answered, "[B]ased upon information and belief . . . Meridian Mall would be responsible for snow and/or ice removal and salting of its parking lot on January 26, 2017."

After the applicable statutory limitations period had expired, ERMC filed its motion for summary disposition under MCR 2.116(C)(10). In this motion, ERMC again contended that it did not own, possess, or control the parking lot where Sharron fell and, for the first time, asserted that the owner of the Mall was Meridian Mall Limited Partnership (MMLP).

In response, plaintiffs alleged that ERMC had been intentionally misleading them because it held itself out as doing business as "Meridian Mall" and used this designation in answer to the interrogatories. Plaintiffs contended that, in light of these actions, ERMC should be judicially estopped from now claiming that it did not own, possess, or control the premises. In addition, plaintiffs sought to amend their complaint to add MMLP as a party despite the expiration of the applicable statutory limitations period.

ERMC countered that it had clearly and consistently denied ownership, possession, and control of the Mall, thus alerting plaintiffs of the need to find the correct entity to sue. ERMC

---

second issue would be "rendered moot if they settled out." In a stipulation filed with this Court following oral argument, the parties represented that MMLP "was dismissed pursuant to stipulation with Plaintiff[s] from the Circuit Court matter." Accordingly, ERMC's second issue is moot, and we decline to address it.

further asserted that it was not responsible for informing plaintiffs of the correct entity to sue, and that the burden was on plaintiffs to bring suit against the correct entity.

At a hearing on ERMC's motion, the trial court ruled that it would allow plaintiffs to amend their complaint because "we need to get the right party." The court stated that it was "not getting into whose responsibility it is" to find the proper defendant because, regardless, it was "keeping [ERMC] in now until [plaintiffs] get the proper defendant in." It explained that it did not "want to let anybody else out since the statute has run." The court said that, after discovery, it "can look at" who the proper defendant is "at that point." The court did not address ERMC's argument that it did not owe Sharron a legal duty.

ERMC now appeals by leave granted.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). ERMC moved for summary disposition under MCR 2.116(C)(10). A motion is properly granted under this subrule when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion filed under MCR 2.116(C)(10), courts "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Dextrom*, 287 Mich App at 415-416. "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 416.

## III. TRIAL COURT'S RULING

On appeal, ERMC reiterates the argument it made before the trial court—that it is entitled to summary disposition because it owed no legal duty to Sharron. The trial court clearly rejected this argument, but it is unclear why. Rather than addressing ERMC's argument that it owed no duty to Sharron, the trial court said that it was "keeping [ERMC] in now until [plaintiffs] get the proper defendant in" because "the statute has run" and "we need to get the right party." With only these statements, the legal basis for the court's ruling is unclear.[3] While we could remand for the trial court to make a record of the reasons for its rulings, the claim ERMC raises on appeal is

---

[3] For instance, it is unclear whether the trial court agreed with plaintiffs' argument that ERMC was judicially estopped from claiming that it did not own or control the premises where Sharron fell. If the trial court did agree with this argument, then its reasoning was improper. "Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citation omitted). ERMC has maintained the same position throughout this case: that it did not owe Sharron a legal duty because it did not own the premises where Sharron fell and otherwise lacked responsibility for removing snow and ice from the parking lot.

strictly legal. Therefore, for the sake of judicial economy, we will resolve the claim raised by ERMC rather than remanding for the trial court to provide a fuller explanation of its ruling.

IV. SUMMARY DISPOSITION

ERMC argues that the trial court erred by denying its motion for summary disposition because there was no genuine issue of fact that ERMC owed Sharron no legal duty when she fell in the parking lot. We agree.

In their complaint, plaintiffs alleged that ERMC was negligent under a theory of premises liability. In a premises liability action, a plaintiff must prove the basic elements of a negligence claim: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the plaintiff suffered damages. *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 285; 933 NW2d 732 (2019). ERMC argues that plaintiffs' negligence claim fails because they cannot establish the first element of their claim—that ERMC owed Sharron a duty. Whether a legal duty exists "is a question of law for the court to decide." *Buhalis v Trinity Continuing Care Services*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (quotation marks and citation omitted).

Michigan's common law imposes a duty when a special relationship exits. *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013). One such special relationship exists between owners and occupiers of land and their invitees, which is the foundation for the duty element of a premises liability action. See *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). This special relationship is "conditioned . . . on the control that a possessor of premises . . . exerts over the premises." *Bailey*, 494 Mich at 604. Thus, ownership of the premises is not dispositive because "possessory rights," like possession and control, "can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Merritt v Nickelson*, 407 Mich 544, 553; 287 NW2d 178 (1980). In other words, one can be liable under a theory of premises liability as not only an owner of the premises but a possessor of the premises exercising control over the them. See *Bailey*, 494 Mich at 604.

In support of its argument that it was not an owner or possessor of the parking lot where Sharron fell, ERMC attached to its motion for summary disposition a 2004 contract between itself and MMLP. In this contract, MMLP was identified as the "Owner," and ERMC agreed "to provide janitorial, maintenance, and security services for **Meridian Mall, Okemos, MI** ('the Shopping Center')." As relevant to this case, ERMC agreed to maintain the parking lot "in a professional manner," to repair parking-lot potholes and parking spaces as necessary, to ensure that the sidewalks remained free of ice and snow (it is not apparent that ERMC agreed to maintain the parking lot in this respect), and generally to "maintain the parking lot in a reasonably prudent manner . . . ." The initial term of the agreement was for three years, and it automatically renewed annually unless certain conditions were met.[4]

---

[4] ERMC also attached to its motion for summary disposition a 2016 contract between itself and the same "Managing Agent" that was identified as MMLP's "Managing Agent" in the 2004

This evidence tends to establish that ERMC was not the owner of the premises, and that the owner was MMLP. In response, plaintiffs merely assert that "genuine issues of material fact remain regarding who owned the mall" without pointing to any evidence tending establish as much.[5] "When properly challenged, plaintiff must establish that . . . there are some evidentiary proofs to support his allegations as to any material fact." *Durant v Stahlin*, 375 Mich 628, 638; 135 NW2d 392 (1965). In other words, in the face of a properly supported motion for summary disposition, the nonmoving party "is required to respond with affidavits or other evidentiary materials to show the existence of a factual dispute," and cannot rely on mere allegations or denials. *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991). Plaintiffs' assertion, without any evidentiary support, that there is a question of fact whether ERMC was an owner of the Mall is not enough to establish a question of fact on the issue.

As previously explained, however, ownership is not dispositive. ERMC may still be liable under a premises-liability theory if it possessed or controlled the parking lot when Sharron fell. The 2004 contract establishes that ERMC had certain obligations related to the parking lot, but, for reasons that will be explained, the contract did not "loan" to ERMC MMLP's right to "possession and control" of the parking lot such that ERMC had a legal duty to make the premises safe. *Merritt*, 407 Mich at 553.

In *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 703; 644 NW2d 779 (2002), this Court explained that "possession" in this context means "the right to exercise control to the exclusion of all others." (Quotation marks and citation omitted; emphasis omitted.) Under its contract with MMLP, ERMC clearly did not have the right to exercise control of the parking lot *to the exclusion of all others*. Indeed, it is apparent that ERMC agreed to maintain the parking lot so that others could use it. As for the meaning of "control" in this context, the *Derbabian* Court explained that it means "exercis[ing] restraint or direction over; dominate, regulate, or command," or "the power to . . . manage, direct, or oversee." *Id*. (quotation marks and citation omitted; alterations in *Derbabian*). There is no evidence that the contract between MMLP and ERMC allowed ERMC to exercise direction over, dominate, regulate, or command in relation to the parking lot. Instead, under the terms of the contract, ERMC was merely to maintain the parking

---

contract. The 2016 contract, however, does not specify who the "Owner" or "Owners" are that the "Managing Agent" is representing. Moreover, "the Property" that the 2016 contract concerns is allegedly identified in an "Exhibit A" to that agreement, but there is no such exhibit attached. While it is possible that this contract is germane to ERMC's arguments in this case, on the available record—particularly with no way of knowing what property the contract concerns—the contract has no relevance.

[5] Shortly before this assertion, plaintiffs quote from Sharron's deposition testimony wherein she said that, after her fall, workers who she "[was] assuming [worked for] the Meridian Mall" were salting the parking lot. In light of Sharron's admitting that she was only guessing who these workers worked for, this testimony cannot create a question of fact as to any issue. See *Estate of Trueblood*, 327 Mich App at 289 ("Speculation cannot create a question of fact.").

-5-

lot in a reasonably prudent manner by doing things like repairing potholes or parking spaces when necessary.

In sum, nothing in ERMC's contract with MMLP suggests that ERMC possessed and controlled the parking lot such that ERMC could be liable for failing to keep the parking lot reasonably safe under a theory of premises liability.[6] Plaintiffs, for their part, do not offer any additional evidence to suggest that ERMC possessed and controlled the parking lot, but instead merely point to the contract provided by ERMC and assert that ERMC was "responsible for parking lot maintenance." Plaintiffs do not provide any caselaw or other authority to support their apparent assertion that this would expose ERMC to liability under a theory of premises liability. Indeed, for the reasons previously explained, this contract did not "loan" sufficient possession and control to ERMC such that ERMC could be liable under a theory of premises liability.

Plaintiffs argue that even if they cannot maintain a claim under a theory of premises liability, they can still maintain a claim under a theory of ordinary negligence because ERMC had a contractual duty to maintain the parking lot free of snow and ice, and there is a question of fact whether ERMC performed its duties under the contract negligently by failing to keep the parking lot free of snow and ice. Fatal to this argument is that—assuming ERMC had a duty under its contract with MMLP to keep the parking lot free of snow and ice—plaintiffs do not allege that ERMC negligently *performed* its duties under the contract, but that ERMC *failed to perform* its duties under the contract, and plaintiffs otherwise fail to allege that ERMC owed them a duty separate and distinct from the duties imposed under the contract. Under these circumstances, plaintiffs, as non-contracting third parties, could not maintain a claim in tort against ERMC. See *Fultz v Union-Commerce Assoc*, 470 Mich 460, 468; 683 NW2d 587 (2004) (holding that the plaintiff, who had slipped on a snow- and ice-covered parking lot, did not have a negligence cause of action against the contractor hired by the premises owner to plow and salt the lot because the plaintiff merely claimed that the contractor had breached its contract by failing to perform its contractual duties, and had "allege[d] no duty owed to her independent of the contract"); *Loweke v Ann Arbor Ceiling and Partition Co, LLC*, 489 Mich 157, 166; 809 NW2d 553 (2011) (explaining that "an action would lie in contract if it was based solely on a defendant's failure or refusal to perform a contractual promise"); *Derbabian*, 249 Mich App at 708.

---

[6] Further, even if ERMC had the theoretical right to possess and control the parking lot in some instances, ERMC needed to be in possession and control of the parking "at the time of [the] plaintiff's injury," *Derbabian*, 249 Mich App at 705, and nothing in the record suggests that it was.

Accordingly, plaintiffs have failed to identify any duty that ERMC owed Sharron at the time of her fall. Thus, as a matter of law, ERMC was entitled to summary disposition on plaintiffs' negligence claim and their attendant loss-of-consortium claim.

Reversed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica